**Alice Keels KIRBY, Administratrix of the Estate of I. A. Keels, Jr., deceased, Appellant,**

v.

**ATLANTIC COAST LINE RAILROAD COMPANY, Appellee.**

**No. 10641.**

United States Court of Appeals Fourth Circuit.

Argued Dec. 6, 1966.

Decided Jan. 10, 1967.

Peter D. Hyman and W. T. McGowan, Jr., Florence, S. C., for appellant.

Hugh L. Willcox, Florence, S. C. (Willcox, Hardee, Houck, Palmer & O'Farrell, Florence, S. C., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and J. SPENCER BELL, Circuit Judges.

HAYNSWORTH, Chief Judge:

The appeal in this Federal Employers' Liability Act case presents factual issues resolved by the District Court. We find no basis for disturbing its resolution of them.

The plaintiff's decedent, an engineer on a passenger train, was killed when the train derailed after entering a crossover at an excessive speed. The plaintiff's theory is that the experienced engineer did not bring his train to a stop, as his orders required, because of some malfunctioning of the brakes. There was abundant, if not overwhelming, testimony that the only fault, however, was in the engineer's application of the brakes, as the District Court found.

Three miles short of the cross-over, the engine passed a signal board showing yellow which would have automatically set the train brakes in a service application had not the engineer affirmatively avoided it with a manual lever under his control. Later, but still in ample time to have brought the train to a safe stop, the brakes were applied, and the train's momentum was checked. Then, however, the brakes were relaxed. The train crew thought nothing of this, for this engineer

habitually brought his trains to a stop by an initial service application of the brakes, followed by a release or relaxation of them, which was followed, in turn, by a hard application of the brakes until the train was brought to a stop. Two of the crewmen, however, did become concerned when they realized that they were closely approaching the cross-over and had not felt the hard reapplication of the brakes. Each of them separately signalled the engineer, and the brakes immediately went into emergency application. It was too late, however, to bring the train to a stop before it entered the cross-over at too great a speed to negotiate it.

There is no question but that the brakes had worked entirely satisfactorily throughout the train's run that day. They worked properly when initially applied by the engineer when he approached the cross-over. There is no question but that they were effectively in full emergency application as the train closely approached and entered upon the cross-over. There was testimony that the brake system is so designed that a failure anywhere in the system will result in an application of the brakes, not in their release. An interim release of the brakes between an effective service application and an effective emergency application could not have been attributable to any defect in the brakes, according to this testimony.

The plaintiff, contrasting the testimony of a witness in the baggage car, who testified that, after the initial application of the brakes, they were not released, though they may have been relaxed, with the testimony of witnesses in the rear of the train, that after the initial service application of the brakes, they felt the release in the deceleration of the train, argues that there must have been an obstruction in the brake lines to the rear of the baggage car which was overcome by the additional pressure in the lines from the emergency brake application. This theory, if it may be said to have evidentiary support, the District Court was not required to accept,

for the record very abundantly supports the conclusion of the District Court that there was no malfunctioning of the brakes; the engineer simply misjudged the distance and delayed too long his customary hard application of the brakes.

Affirmed.